**This order is SIGNED.**



Dated: December 13, 2019

**R. KIMBALL MOSIER
U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>TROY ALLEN DYCHES and<br>AUBREY CHARISSE DYCHES,<br><br>Debtors. | Bankruptcy Case No. 10-26099<br>Chapter 7 |
| KATHRYN DENSLEY,<br><br>Plaintiff,<br><br>v.<br><br>TROY DYCHES,<br><br>Defendant. | Hon. R. Kimball Mosier<br><br><br>Adversary Proceeding No. 10-2653 |

**MEMORANDUM DECISION**

Plaintiff Kathryn Densley obtained a money judgment in Utah state court against Defendant Troy Dyches. When Dyches subsequently filed a chapter 7 petition, thereby interposing the "new defense of bankruptcy"[1] to the collection of that debt, Densley commenced the above-captioned adversary proceeding to except that debt from Dyches's discharge. She prevailed, and in 2011 the Court entered a judgment rendering the state court judgment

---

[1] *Brown v. Felsen*, 442 U.S. 127, 133 (1979).

nondischargeable. Concerned that the statute of limitations to collect on a judgment under Utah law would soon expire, Densley filed a motion to renew this Court's judgment three days before the eight-year anniversary of its entry, which Dyches opposed. The Court conducted a hearing on that motion and took the matter under advisement.

After considering the relevant documents in this adversary proceeding and the parties' oral arguments, and after conducting an independent review of applicable law, the Court issues the following Memorandum Decision denying Densley's motion to renew the judgment. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7052.[2]

## I.  JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to 28 U.S.C. § 1334 and § 157(b)(1). Densley's complaint sought to except a debt from Dyches's discharge, making this a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(I), and she successfully obtained a judgment of nondischargeability. Densley's current motion to renew that judgment is still within the Court's core jurisdiction because it asks the Court to continue enforcement of that judgment, and "the enforcement of orders resulting from core proceedings are themselves considered core proceedings."[3] As a result, the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

---

[2] Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

[3] *Williams v. Citifinancial Mortg. Co. (In re Williams)*, 256 B.R. 885, 892 (8th Cir. BAP 2001) (citations omitted).

## II.  FINDINGS OF FACT

The facts of this case are neither complex nor lengthy. Kathryn Densley sued Profusion Capital, Inc. and Troy Dyches in Utah state court in 2009. On April 23, 2010, the state court entered default judgment in favor of Densley and against Profusion Capital and Dyches, jointly and severally, in the amount of $603,356.58.[4] Two weeks later, Dyches and his wife, Aubrey Charisse Dyches, filed a chapter 7 petition in this Court.

Densley timely filed a complaint, which was later amended, objecting to the discharge of the state court judgment under 11 U.S.C. § 523(a)(2)(A) and (a)(6).[5] Dyches failed to answer, and on June 17, 2011 this Court entered default judgment in favor of Densley and against Dyches, ordering that:

> Defendant Troy Dyches'[s] indebtedness to Plaintiff/Creditor Kathryn Densley in the amount of $603,356.58 as determined by the Fourth Judicial District Court in the case entitled *Kathryn Densley v. Profusion Capital, Inc., and Troy Dyches,* Case No.: 090403030, and reflected in a judgment from that Court[,] is non-dischargeable under 11 U.S.C. § 523.[6]

The Court also awarded Densley fees and costs of $6,934.77 for a total nondischargeable debt of $610,291.35.[7] As Densley's counsel admitted, the award of fees and costs was accomplished pursuant to the express provisions of the state court judgment, which stated that it "shall be augmented in the amount of the reasonable costs and attorney's fees expended in collecting [it] by execution or otherwise."[8]

The following year Dyches moved to set aside that default judgment, arguing principally that it was void under Fed. R. Civ. P. 60(b)(4) because Densley had not properly served the

---

[4] Docket No. 8, Ex. A.
[5] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[6] Docket No. 34, at 2.
[7] *Id.*
[8] Docket No. 8, Ex. A.

amended complaint or provided adequate notice of the motion for default judgment. The Court denied Dyches's motion to set aside and, with the exception of the withdrawal of Dyches's then-counsel, the docket lay silent until this year.[9]

On June 14, 2019, Densley filed a motion to renew this Court's June 17, 2011 judgment. Five days later, Densley filed a proposed order renewing the judgment.[10] The Court refused to sign the order because Densley's motion did not comply with Utah R. Civ. P. 58C—one provision of Utah law governing renewal of judgments—but permitted her to amend the motion. Densley filed an amended motion on June 24, asserting that the judgment had grown to $765,799.50, reflecting accrued post-judgment interest and attorney's fees and deducting $1,000 for payments made.[11] Dyches filed an objection to the motion on July 11 and, more than a month later, filed a notice setting the matter for hearing according to the Local Rules of this Court. Densley filed a reply on September 9.

### III. CONCLUSIONS OF LAW

A judgment creditor may renew its judgment in federal court but must do so in accordance "with the state law governing such relief" applicable in the state in which the federal court sits.[12] In Utah, the Renewal of Judgment Act (Act)[13] and its rule-based counterpart, Utah

---

[9] Densley asserted that she has actively pursued collection remedies in state court in the interim, but that is not material to this decision.
[10] Docket No. 48.
[11] Docket No. 49. Densley's original motion asserted a total judgment of $759,566.35. Docket No. 47. The difference between the two totals derives almost entirely from the amount of accrued post-judgment interest—$123,645.00 in the original motion and $130,128.15 in the amended one. The original motion also deducted only $750 for payments made.
[12] *Tibbs v. Vaughn*, No. 2:08-cv-787-TC, 2019 WL 528232, at *1 (D. Utah Feb. 11, 2019); *see also McCarthy v. Johnson*, No. 98-4003, 1999 WL 46703, at *1 (10th Cir. Feb. 3, 1999) (unpublished) ("[W]e think it beyond question that renewal of a judgment is a type of relief available to litigants, and that the requirements governing the granting of such relief are governed by state law.").
[13] Utah Code Ann. § 78B-6-1801 *et seq.*

4

R. Civ. P. 58C, govern renewal of a judgment. While bankruptcy courts apply state substantive law frequently, renewal of a judgment, at least in this District, presents one of the few times when a bankruptcy court will apply state procedural law. Perhaps owing to the rarity of following that law in this Court, both parties struggled to comply with its requirements. As a result, the Court must address at the outset whether the parties complied with the procedural requirements to bring Densley's motion to renew before the Court for decision.

Densley complied with Rule 58C in that she sought renewal of her judgment by motion, but her original motion did not hew to other aspects of Rule 58C. The motion's defects include its failure to provide a copy of the judgment with the motion,[14] and to state, via supporting affidavit, what efforts Densley had made to determine if the address she used to send notice of the motion to Dyches was his correct address.[15] In addition, Densley violated the Rule 7 procedures applicable to motions, which Rule 58C(a) expressly incorporates by reference.[16] Among other things, Rule 7 requires that a nonmoving party be given fourteen days after a motion is filed to file a memorandum in opposition.[17] If a nonmoving party files such a memorandum, the moving party has seven days after its filing to file a reply.[18] "When briefing is complete or the time for briefing has expired, either party may file a 'Request to Submit for Decision,'" but a court will not rule on a motion unless a party files a request to submit the motion for decision.[19] When a court is ready to rule, it will direct a party "to prepare a proposed order confirming the court's decision."[20] In fact, Rule 7 prohibits filing a proposed order before a

---

[14] Utah R. Civ. P. 58C(a).
[15] Utah R. Civ. P. 58C(b)(2).
[16] Utah Code Ann. § 78B-6-1803 similarly states that "[n]otice of a motion for renewal of judgment is served in accordance with the Rules of Civil Procedure and opposition may be filed pursuant to the rules."
[17] Utah R. Civ. P. 7(d)(1).
[18] Utah R. Civ. P. 7(e)(1).
[19] *See* Utah R. Civ. P. 7(g).
[20] Utah R. Civ. P. 7(j)(2).

court reaches a decision.[21] Densley's premature submission of a proposed order was out of sequence with Utah's detailed motion procedures. Simply put, none of the procedural antecedents to submission of a proposed order had yet occurred. The Court had not called for an order confirming its decision because it had not reached one; it had not reached one because the motion had not been submitted for decision; and the motion had not been submitted for decision because the period in which Dyches could have opposed the motion had not yet passed.[22]

Dyches has argued that the Court should deny Densley's motion because of these defects.[23] This argument is unavailing. The previously described shortcomings were not fatal, but curable, and the Court permitted Densley to amend her motion to fix them. To be sure, the amended motion suffers from some of the same problems, namely that it does not provide a copy of the judgment with the motion, nor does it state what efforts Densley made to determine if Dyches's address was correct. In addition, the parties failed to file a request to submit the motion for decision. The Court concludes, however, that these defects do not prevent the Court from considering the merits of the motion for three reasons. First, Densley's failure to attach a copy of the judgment is not material because Dyches and the Court can readily access it on the docket. Second, Dyches's objection obviates any concern over whether he received proper notice of the motion. Third, the motion eventually came before the Court for decision, albeit because Dyches

---

[21] With five exceptions, all of which are inapplicable here, the rule states that "[a] party may not file a proposed order concurrently with a motion or a memorandum or a request to submit for decision." Utah R. Civ. P. 7(j)(6).

[22] Utah Code Ann. § 78B-6-1802(5) also provides that "the time for responding to the motion" must have expired before a court can renew a judgment.

[23] At the hearing on the motion, Dyches argued that the motion should be denied because it was, at least in its initial form, brought under the "wrong statute." The Court attempted to elucidate what Dyches meant by "wrong statute," since Densley's original motion did not cite the Act, Rule 58C, or any other provision of state or federal law. (Densley's failure to cite applicable law also arguably violated another part of Rule 7 that requires a motion to contain "a concise statement of the relief requested and the grounds for the relief requested." Utah R. Civ. P. 7(c)(1)(A).) After some questioning, the Court determined that Dyches was arguing that the motion should be denied for the same reason the Court refused to sign Densley's proposed order, i.e., the motion did not comply with Rule 58C.

noticed the matter for hearing under the Court's Local Rules. To require that a request to submit be filed after conducting a hearing on the motion would elevate form over substance.[24]

But the procedural problems do not end with Densley's motion; they extend to Dyches's objection and Densley's reply. Dyches objected to the motion seventeen days after it was filed, which was three days after the Rule 7(d)(1) deadline,[25] and his objection does not comply with the requirements for titling and organizing a memorandum in opposition.[26] What's more, Densley filed her reply nearly two months after Dyches's objection, well after the seven-day reply deadline, and it likewise fails to conform to the titling and organizational requirements for a reply memorandum.[27] Neither party raised the timeliness of the other's filings or otherwise challenged their conformity with Rule 7, and the Court can find no provision in that rule that requires striking tardy memoranda. Absent an objection, the Court will consider Dyches's memorandum in opposition and Densley's reply memorandum.

On to the merits. While the parties' noncompliance with the Act and Rule 58C does not preclude the Court from hearing the motion to renew, Densley's noncompliance with one crucial

---

[24] Of course, the Court does not condone noncompliance with applicable procedural rules, and parties seeking to renew a judgment should observe the requirements of the Act and Rule 58C.

[25] The Court does not believe this response time is coincidental and surmises that Dyches assumed that the Local Rules applied to Densley's motion. In most matters in this Court the nonmoving party has seventeen days to object to a motion; the Local Rules establish a fourteen-day objection deadline for matters for which the Federal Rules of Bankruptcy Procedure do not prescribe a different response period, and the Local Rules add three extra days to that deadline when service is made, as here, by first-class mail. *See* Bankr. D. Ut. LBR 9006-1(b)(3) & (d). Moreover, Dyches's objection to the amended motion on the grounds that Densley failed to provide notice of it in compliance with the Local Rules—and his own use of the Local Rules to notice the matter for hearing—support the conclusion that Dyches was following those rules in responding to Densley's motion.

[26] *See* Utah R. Civ. P. 7(d)(1) (requiring that the nonmoving party "title the memorandum substantially as: 'Memorandum opposing motion [short phrase describing the relief requested]'" and provide appropriate headings within the memorandum).

[27] *See* Utah R. Civ. P. 7(e)(1) (requiring that the moving party "title the memorandum substantially as: 'Reply memorandum supporting motion [short phrase describing the relief requested]'" and provide appropriate headings within the memorandum).

requirement of the statute and the rule prevents the Court from granting it. The pith of this case deals with Utah Code Ann. § 78B-6-1802, which provides that:

> A court of record may renew a judgment issued by a court if: (1) a motion is filed within the original action; (2) the motion is filed before the statute of limitations on the original judgment expires; (3) the motion includes an affidavit that contains an accounting of the original judgment and all postjudgment payments, credits, and other adjustments which are provided for by law or are contained within the original judgment; (4) the facts in the supporting affidavit are determined by the court to be accurate and the affidavit affirms that notice was sent to the most current address known for the judgment debtor; (5) the time for responding to the motion has expired; and (6) the fee required by Subsection 78A-2-301(1)(*l*) has been paid to the clerk of the court.[28]

The principal point of contention—and the dispositive issue—concerns whether Densley complied with the first requirement, i.e., whether she filed her motion to renew "within the original action."[29] Densley maintains that this adversary proceeding is the original action, while Dyches argues that that label belongs to the state court case.

As far as the Court can discern, the parties have presented an issue of first impression in this District. The Court could not find any case addressing whether an adversary proceeding commenced in bankruptcy court to except from a debtor's discharge a debt based upon a previously adjudicated claim in a non-bankruptcy proceeding constitutes the "original action" for purposes of renewing a judgment under Utah law. Resolution of this question therefore requires the Court to interpret the relevant provisions of the Act. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[30] If the highest state court has not yet issued a decision on the issue in question, "federal authorities must apply

---

[28] Utah Code Ann. § 78B-6-1802 (2018).
[29] Rule 58C imposes the same requirement: "A judgment creditor may renew a judgment by filing a motion under Rule 7 in the original action before the statute of limitations on the original judgment expires." Utah R. Civ. P. 58C(a).
[30] *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (citations omitted).

8

what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."[31] "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"[32] Because the Utah Supreme Court and Utah Court of Appeals have not addressed the precise question at issue in this case, this Court must predict how the Utah Supreme Court would answer it.

Neither the Act nor Rule 58C defines "original action." Utah law's principles of statutory interpretation require that courts first "look to the ordinary meaning of the words, using the dictionary as [the] starting point. After determining [the] starting point, [courts] then must look to the context of the language in question."[33] This inquiry into a word's surroundings asks courts to ascertain "what meaning a word *must* bear in a particular context" by "selecting the best meaning among a range of options, based on other indicators of meaning evident in the context of the statute (including, particularly, the structure and language of the statutory scheme)."[34] The ordinary meaning of "original" is plain: "[p]receding all others in time; first."[35] But applying the most commonly understood definitions of "action," i.e., "[t]he state or process of acting or doing," "[a]n act or deed," or "[a] movement or a series of movements,"[36] leaves the meaning of the statute muddled. It makes no sense to say that a motion to renew must be filed in the first act or movement. The context of the statute, however, clarifies matters. The Act is part of the Utah Judicial Code and describes a legal procedure to renew a judgment conducted before a "court of

---

[31] *Id.* at 1119 (quoting *Comm'r v. Bosch's Estate*, 387 U.S. 456, 465 (1967)).
[32] *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).
[33] *State v. Lambdin*, 424 P.3d 117, 122 (Utah 2017) (citations and internal quotation marks omitted).
[34] *Hi-Country Prop. Rights Grp. v. Emmer*, 304 P.3d 851, 856 (Utah 2013) (citations and internal quotation marks omitted).
[35] *Original*, The American Heritage Dictionary (2d College ed. 1982).
[36] *Action*, *id.*

record." Since the procedure occurs before a court, certain terms in the statute are more likely to have the meanings ascribed to them by the legal profession. This proves true not only of "action," but also of "motion," another word in the statute whose specialized legal definition, "[a] written or oral application requesting a court to make a specified ruling or order,"[37] makes better contextual sense than its ordinary meaning, "[t]he action or process of changing position."[38] The Court concludes that "action" is best understood here according to its meaning in the legal field: a "civil or criminal judicial proceeding."[39]

The inquiry does not quite end there, however. Although the Utah Supreme Court has not decided the issue in this case, it did further illuminate the meaning of "original action" in *Gildea v. Wells Fargo Bank, N.A.* when it described the Act's operation: "Parties seeking to renew a judgment now do so by filing 'a motion . . . *within the original action*' in which the judgment was first obtained."[40] Combining the plain language of the statute with the phrase "in which the judgment was first obtained" yields a principle of easy application: In most instances, a party need only look to the judicial proceeding in which it first obtained the judgment it seeks to renew to find the original action.

But this principle's ordinarily direct path takes a more circuitous route in bankruptcy due to the composition of nondischargeability judgments. Such judgments are bipartite, meaning "[i]n bankruptcy court there are two separate and distinct causes of action: One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions."[41] The

---

[37] *Motion*, Black's Law Dictionary (8th ed. 2005).
[38] *Motion*, The American Heritage Dictionary (2d College ed. 1982).
[39] *Action*, Black's Law Dictionary (8th ed. 2005).
[40] *Gildea v. Wells Fargo Bank, N.A.*, 347 P.3d 385, 392 (Utah 2015).
[41] *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 336 (10th Cir. 1994) (citation and internal quotation marks omitted); *see also Hamilton v. Elite of Los Angeles, Inc. (In re Hamilton)*, 584 B.R. 310, 322 (9th Cir. BAP 2018) ("Section 523 requires bankruptcy courts to determine whether certain

separateness of these two aspects of a nondischargeability judgment is shown by their ability to be entertained and adjudicated by different courts at different points in time. In most circumstances, bankruptcy and non-bankruptcy courts share authority to resolve both portions of a nondischargeability judgment. Since the cause of action on the debt is based on applicable non-bankruptcy law—such as a claim for fraud, larceny, or violation of securities laws—non-bankruptcy courts have jurisdiction to resolve such claims. But bankruptcy courts also possess "both subject matter jurisdiction and constitutional authority to liquidate debts in the context of dischargeability actions."[42] As for the cause of action on the dischargeability of the debt, bankruptcy courts plainly have the authority to enter judgment on any claims under § 523, since "determinations as to the dischargeability of particular debts" is one category in the list of core proceedings that bankruptcy courts "may hear and determine."[43] But with the exception of determinations under § 523(a)(2), (a)(4), and (a)(6), over which bankruptcy courts have exclusive jurisdiction, "jurisdiction over all other § 523 actions is concurrent with the state courts."[44]

---

'debts' are discharged in bankruptcy. This entails two questions: first, the existence and amount of a debt; and second, whether and to what extent the debt is dischargeable.").

[42] *Manchester v. Kretchmar (In re Kretchmar)*, 591 B.R. 876, 881 (Bankr. W.D. Okla. 2018) (citing *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793-94 (10th Cir. 2009)). Of course, bankruptcy courts also have the option to "modify the automatic stay to permit [the non-bankruptcy] court litigation to proceed to judgment for the purpose of establishing a debt at issue in a pending nondischargeability action." *BUKE, LLC v. Eastburg (In re Eastburg)*, 440 B.R. 851, 862 (Bankr. D.N.M. 2010).

[43] 28 U.S.C. § 157(b)(1), (b)(2)(I).

[44] *In re Guseck*, 310 B.R. 400, 404 (Bankr. E.D. Wis. 2004). While complaints asserting § 523(a)(2), (a)(4), and (a)(6) claims must "be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)," Fed. R. Bankr. P. 4007(c), there is no time limit to assert a claim under the remaining sixteen exceptions to discharge. Fed. R. Bankr. P. 4007(b). These sixteen exceptions are "self-effectuating," meaning that "no action is required before the discharge is entered. The debts are excepted from discharge simply because of the nature of the debts." *Everly v. 4745 Second Ave., Ltd. (In re Everly)*, 346 B.R. 791, 795 (8th Cir. BAP 2006). Of course, a proceeding may be necessary to determine whether a debt falls into one of those sixteen categories. Creditors can choose to litigate such a claim in bankruptcy court before the debtor's case is closed. Debtors can also reopen closed cases to litigate the matter, as Rule 4007(b) expressly permits. Or they can litigate the matter in a non-bankruptcy court where they are subject to a post-discharge collection action, to which they have asserted their bankruptcy discharge as an affirmative defense. *E.g.*, *In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D.N.C. 2000).

In short, the two halves of a nondischargeability judgment may be entered as separate judgments: one liquidating the underlying debt and the other declaring it excepted from discharge. And as the preceding paragraph suggests, these two judgments can be entered in a variety of combinations. A bankruptcy court may adjudicate them simultaneously in a § 523 proceeding.[45] It is also possible for a debt to be liquidated and declared nondischargeable entirely outside of a bankruptcy court. Or, as in this case, a non-bankruptcy court may reduce the debt to judgment pre-petition and the bankruptcy court may simply enter judgment declaring it nondischargeable. Whatever the combination, the cardinal task, for purposes of renewal, is identifying which judgment liquidated the underlying debt. That is so because of a crucial distinction between the two parts of a nondischargeability judgment: The portion that determines the dischargeability of the debt never needs to be renewed since it does not expire.[46] By contrast, the portion that liquidates the underlying debt is subject to any applicable statutes of limitations under non-bankruptcy law and must be renewed under that law. Since only that latter portion requires renewal, any motion to renew under the Act or Rule 58C must be filed in the action in which the judgment liquidating the underlying debt was obtained. Accordingly, the Court concludes that the Utah Supreme Court would rule that the original action, within the context of a nondischargeability judgment, is the judicial proceeding in which a party first obtains the judgment liquidating the underlying debt at issue.

---

[45] In cases "where there is no prior state court judgment[,] . . . the bankruptcy court needs to determine both the existence of a debt **and** its dischargeability. The bankruptcy court may then issue a money judgment for the debt." *In re Hamilton*, 584 B.R. at 323-24.

[46] "[T]he general rule is that if a particular debt is determined to be nondischargeable in a valid and final judgment by a court with jurisdiction and from which there was an opportunity to appeal, then the debt is always nondischargeable on the basis determined in the judgment. In other words: once nondischargeable, always nondischargeable." *Moncur v. Agricredit Acceptance Co. (In re Moncur)*, 328 B.R. 183, 186 (9th Cir. BAP 2005) (citation omitted). Section 523(b) is an exception to this general rule and permits debts excepted from discharge under § 523(a)(1), (a)(3), or (a)(8) in an earlier case to be eligible for discharge in a later case, depending on the circumstances. Dyches's debt to Densley does not fall within § 523(a)(1), (a)(3), or (a)(8), however.

Here, the state court liquidated Dyches's debt to Densley in its April 23, 2010 judgment. When Densley filed this adversary proceeding against Dyches, she already had a liquidated judgment against him. She did not litigate here, and this Court did not establish, the existence of the debt Dyches owed to her. And when this Court entered default judgment against Dyches, it did not amend the state court's judgment; it merely excepted the debt from Dyches's discharge. The language in the Court's June 17, 2011 judgment makes that point clear:

> Defendant Troy Dyches'[s] indebtedness to Plaintiff/Creditor Kathryn Densley in the amount of $603,356.58 as determined by the Fourth Judicial District Court in the case entitled *Kathryn Densley v. Profusion Capital, Inc., and Troy Dyches,* Case No.: 090403030, and reflected in a judgment from that Court[,] is non-dischargeable under 11 U.S.C. § 523.[47]

As a result, the judgment that requires renewal is the state court's April 23, 2010 judgment. And because Densley first obtained that judgment in the judicial proceeding she filed there against Dyches, that proceeding is the original action under Utah law, which mandates that she file her motion to renew in that action. Stated succinctly, Densley filed her motion to renew in the wrong court and the wrong judicial proceeding.

Densley contends, however, that this Court modified the state court's judgment by awarding her fees and costs, such that it entered a new money judgment in the amount of $610,291.35, thereby making this adversary proceeding the original action. The Court disagrees because the very language of the state court judgment precludes such an argument. That judgment provides that it "shall be augmented in the amount of the reasonable costs and attorney's fees expended in collecting [it] by execution or otherwise."[48] According to the express terms of that judgment, an award of fees and costs simply augments the judgment. This suggests that adding fees and costs does not result in a new judgment, but merely increases the amount of

---

[47] Docket No. 34, at 2.
[48] Docket No. 8, Ex. A.

13

the original judgment. The language in the Court's June 17, 2011 judgment comports with that reading. It states that Densley "is entitled to recover her fees and costs for the commencement of this action in the amount of $6,934.77, *to be added* to the $603,356.58 for a total debt of $610,291.35."[49] Because this Court simply augmented the amount of the state court's judgment according to its terms, that judgment remains the reference point for determining the original action under Utah law.

Densley's reliance on *Sasson*[50] in aid of this argument is misplaced. Not only is *Sasson* not controlling, but it is also plainly distinguishable. In that case, the Ninth Circuit addressed the question of whether the existence of a judgment liquidating a debt prevents a bankruptcy court from entering a new judgment in the context of a subsequent nondischargeability proceeding. The court answered that question clearly: "The fact that a debt has been previously liquidated to judgment does not deprive the bankruptcy court of jurisdiction, nor of any of its statutory and equitable power" to enter a new judgment.[51] But the Ninth Circuit was careful to note that preclusion principles typically bar revisiting the amount of a previously liquidated debt.

> [W]hen the amount of the debt has been determined by the state court and reduced to judgment[,] . . . [and] if there are no new issues, the bankruptcy court should ordinarily decline to allow the parties to relitigate the debt amount and should give the state court judgment as to the amount of [the debt] preclusive effect.[52]

The bankruptcy court in *Sasson* entered a new judgment, however, precisely because there were "new issues" involving the judgment debtor's post-judgment conduct. After a creditor obtained a

---

[49] Docket No. 34, at 2. (emphasis added).
[50] *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864 (9th Cir. 2005).
[51] *Id.* at 870.
[52] *Id.* at 872 (citation omitted). In fact, the Ninth Circuit BAP cited *Sasson* for the principle that "[w]here there is a valid state court money judgment, the bankruptcy court should not issue a new money judgment." *In re Hamilton*, 584 B.R. at 324.

14

state court judgment against Sasson on a claim for breach of a promissory note, Sasson dissipated his assets then filed a chapter 7 petition.[53] The creditor filed and prevailed on a § 523(a)(6) claim, with the bankruptcy court finding that "Sasson's transfer of assets . . . constituted a willful and malicious injury."[54] On appeal, the Ninth Circuit concluded that the bankruptcy court did not violate preclusion principles by entering a new judgment because

> the parties were not relitigating the merits of the state court judgment in the nondischargeability proceeding. The adversary proceeding was based on Sasson's "willful and malicious" post-judgment conduct, not on the contractual breach that formed the basis of the state court judgment. Thus, the parties were litigating a different claim in the nondischargeability proceeding in bankruptcy, which was not precluded by the state court contract claim judgment.[55]

In this case, Densley was not, as the creditor was in *Sasson*, litigating a different claim in bankruptcy court based on Dyches's conduct after the state court entered its judgment. The relevant factual allegations in Densley's amended complaint concern Dyches's conduct prior to the state court judgment. In addition, Densley did not ask that this Court enter a new judgment; she requested that the Court "find and declare that the Debt in the amount of $603,356.58 (as reflected in the damages awarded in the State Court Judgment) is nondischargeable" and award her "attorneys' fees and costs of suit."[56] And this Court did just that. It relied on the state court judgment for the amount of the debt and excepted that debt from Dyches's discharge. When the Court added Densley's attorney's fees and costs to that amount, it was not entering a new judgment, but rather augmenting the state court judgment pursuant to its own terms and Densley's request. Because the Court did not enter a new judgment liquidating the underlying debt, the state court proceeding remains the original action under Utah law.

---

[53] *In re Sasson*, 424 F.3d at 866-67.
[54] *Id.* at 867.
[55] *Id.* at 873.
[56] Docket No. 23, at 6-7.

15

Since the Court determines that Densley did not comply with Utah Code Ann. § 78B-6-1802(1), the Court does not need to address Dyches's alternative argument, i.e., Densley's motion was untimely because she failed to file it "before the statute of limitations on the original judgment expire[d]" as required by Utah Code Ann. § 78B-6-1802(2). The Court notes only in passing that neither party addressed possible tolling of the relevant statutes of limitations even though tolling appears relevant in this case.[57]

## IV. CONCLUSION

The Court hopes that this decision provides guidance on an arcane, though important, legal question. Utah law requires that a motion to renew a judgment be filed within the original action. In the context of nondischargeability proceedings, the original action is the judicial proceeding in which a creditor first obtains the judgment that liquidates the underlying debt. Because Densley first obtained the judgment on the underlying debt against Dyches in state court, and because this Court did not modify that judgment or enter a new judgment, the state court proceeding constitutes the original action under Utah law. As a result, Densley's motion to renew was not brought in the correct court or the correct proceeding and must be denied. An Order and Judgment will be issued in accordance with this Memorandum Decision.


_____END OF DOCUMENT_____

---

[57] Dyches's bankruptcy certainly tolled the eight-year duration period for judgments in Utah Code Ann. § 78B-5-202, whose predecessor Utah courts have declared subject to tolling by, among other things, "the Bankruptcy Code's automatic stay provisions." *Sittner v. Schriever*, 22 P.3d 784, 787 (Utah Ct. App. 2001) (addressing § 78-22-1, the predecessor to § 78B-5-202). In her reply, Densley noted that she registered this Court's judgment in state court on March 28, 2014 and Dyches participated to some degree in supplemental proceedings, implying, without explanation, that these events affected the statutes of limitations in some way. As the plaintiff, Densley bears the "burden of establishing that a limitations period should be tolled." *Stephenson v. Elison*, 405 P.3d 733, 740 (Utah Ct. App. 2017) (citation omitted). But Densley failed to demonstrate how these events would alter the running of the statutes of limitations. At any rate, even if the relevant statutes of limitations had not expired, Densley's motion would still fail to comply with Utah Code Ann. § 78B-6-1802(1).

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Benjamin P. Thomas | bthomas@strongandhanni.com, cbecerra@strongandhanni.com |
| Jacob C. Briem | cbecerra@strongandhanni.com |
| Russell C. Skousen | rskousen@skousenlawfirm.com, skousen.ecf@gmail.com |
| | rolsen@skousenlawfirm.com, c.rr77406@notify.bestcase.com |
| Robert S. Payne | robertspaynelaw@gmail.com, robert_s_payne@yahoo.com |
| | r51300@notify.bestcase.com |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.